Good morning. I'm Assistant State's Attorney Ashley Kuzan on behalf of the people. Good morning, your honors. I'm Eddie Anderson, counsel for Mr. Bobby Ball. Good morning. Proceed whenever you're ready, counsel. May it please the court, counsel. In this case, we urge this court to reverse Mr. Ball's conviction on two grounds. First, that a due process violation occurred in the trial court's reversing the burden of proof in production in the hearing on the motion to suppress. And second, that essentially a Miranda violation occurred where a statement was taken in violation of the Siebert case, the two-step questioning by the police that also violated Mr. Ball's rights. With regard to the suppression hearing, Mr. Ball filed a motion to suppress his statements. At the hearing, the trial court immediately asked defense counsel to put on his case. Defense counsel objected, said it's not my burden, it's the state's burden in a motion to suppress. The state said no, it is the defense's burden, and the court required counsel to go ahead and put Mr. Ball on the stand. Mr. Ball testified, presented his explanation for how his statement was taken, indicating that there had been some coercion in the taking of the statement, he hadn't been given his rights. The state put on no evidence. Despite that, the court granted the state's motion to dismiss the suppression motion, denied the motion, and they went ahead to trial where that statement was used against him. Counsel, let me ask you, assuming that you are correct that the court, the trial court made an error, is there any way that the trial court, is there any way to subsequently correct or cure that error to avoid reversal such as you're asking us to do? Once he switches the burden, he's made the defendant prove that his statement is, was improperly taken, it's a due process violation. There isn't really any way, shy of, as the state would argue, an argument that there's overwhelming evidence that Mr. Ball's statement was taken. So in your view, that's an automatic reversal no matter what happens after that, is that your argument? Well, the Peck case and the Jones case would seem to follow from that, that you've, that's a serious enough violation of the defendant's rights that once that statement's going to be used at trial against him, and a confession is certainly My question is a little bit more, is much more, not a little bit, it's much more narrow than that. I think my question is, is it your argument that once the burden is shifted to, let's assume for the moment that you're correct, that the trial court improperly shifted the burden to the defendant, once that happens, is it your argument that that requires an automatic reversal no matter what comes later, is that your argument? If the statement ended up not being used at trial, it wouldn't require a reversal. If the court, if the judge caught himself in midstream and said, you know, this is incorrect, we're going to start over and mentally I'm going to come at this from the aspect of it's on the state to show me that this statement is, is correct. If the statement was properly taken, you wouldn't have to. But if the judge is going to go about his decision process on the admissibility of the statement with it on the defendant, I'm not sure that there is any way to remedy that. Would you say that, is it possible that the evidence presented at trial showing that the, say, for the sake of argument, that the evidence at trial showed that the defendant made a knowing and intelligent and voluntary waiver of his constitutional rights, say that happened at trial, would that cure the defect in the burden shifting at the pretrial, at the suppression hearing? I would say no, because once you force the defendant to prepare for trial knowing that his statement is going to be used against him, you've changed the entire aspect of the process. So your argument is that there is no method by which that, that burden shifting can ever be cured and it requires an automatic reversal. That's, is that, I'm just trying to understand. No, I wouldn't, I wouldn't say categorically. As I said, I can imagine situations with, you know, overwhelming evidence that just, you know, a confession that's minimal admission with overwhelming other evidence, which isn't the case here, that a court could find that. But given that the state shows you those cases, I would say that the Peck case and the Jones case, especially the Jones case where there was a, in my reply brief, where the court found that whatever came in at trial didn't cure the problem. There are many cases that hold voluntariness at time of trial will cure many cases. Am I correct? The state cites, you know, there are cases. How do you differentiate your case from those? You have a situation, I think, in a number of those cases where it's the shifting of, and I may be wrong, it's the shifting of the burden of production, not necessarily the burden of proof. Here you've got the blatant shifting of the burden of production and proof to the defendant. And I would argue that in a case like this where the Mr. Ball statement that's admitted with subsequent videotape admissions is so powerful that clearly the borrowing of the statement in pretrial changes the entire context of the case. I don't want to use up all my time, so I'd like to move to the Siebert violation, if I may. Another problem with this case is the information that came out during the detective's trial testimony that she consciously chose to not provide Miranda to Mr. Ball, let him make a statement that incriminated himself, and then gave the Miranda warnings. That's a Siebert violation. Let me ask you, counsel, did the pre-warning statements that the defendant gave to Detective Blackledge and the post-warning statements overlap? Was there any overlap between the two sets of statements? There was virtually no break in the questioning where she leads him into a contradiction. He admits his presence at the crime scene. She Mirandizes him and then continues on with the questioning. So the whole thing flows together. That's not the state's argument, but they'll get a chance to certainly speak to that. But I'm asking more specifically, was there any difference in substance in the content of what he said prior to the time he was Mirandized, as opposed to what he said after he was Mirandized? The statements became much more specific and much more detailed once he was conscious, I guess, that he had pretty much given up the incriminating fact of his presence at the crime scene, and he goes ahead and tells a story different than the one he had been providing prior to that. Let me ask you, what in the record shows that the officer made a conscious decision? I believe she testified, and I cite it, that it was her intention to question him without initially giving him Miranda. She indicated that she just saw him as a person of interest. As I point out, there are enough facts here that she had that that's not a very credible statement. She had plenty of reason to know that he was very, very likely involved at the crime scene and that her intention was to question him on until she got him, placed himself at the crime scene. I have a cite to it in the record. In rebuttal, I'll give you that. Your Honor, I consider this case to be a serious one with a significant due process violation that requires reversal of the conviction, and I urge this Court to do that. Thank you. May it please the Court, I'm Assistant State's Attorney Ashley Cusa on behalf of the people of the State of Illinois. Regarding the first issue, the record as a whole shows that the trial court properly admitted defendant's statements into evidence. Defendant asks you to focus on the error that occurred at the pretrial motion with tunnel vision. Ms. Cusa, what prevented the State from presenting its own evidence at the suppression hearing? Nothing prevented the State from doing so, Your Honor. That's my answer, and what happened here was, in fact, an error at the pretrial motion. Well, that's very good, very rarely if I had anybody stand here and admit. It's a good thing to do because it certainly enhances your credibility, but that's good. And as I was saying, defendant is focusing on this error with tunnel vision. But this sort of analysis is wholly inappropriate as case law instructs courts to consider all of the evidence on the record to determine whether or not the trial court's ruling on the motion was proper. In fact, as Justice Harris pointed out, courts have specifically acknowledged that an error by the trial court in shifting the burden on a motion to suppress statements is cured when there's convincing trial testimony that supports a finding of voluntariness. And does that make it okay, I mean, to stand here and say, well, it was an error and we did shift the burden, but, you know, let's forget about all of that because look what happened later. I mean, that's in effect what you're saying, isn't it? I understand your concern, and what we have to look at from the case law is why the courts have allowed these errors to be cured. And this rule makes sense because to just throw out — No, what we understand is there are certain procedural rules that are to be followed by both the defense and the state, and the procedural rules require that the burden not be shifted to the defendant. That's the procedural rule, and it's glossing over it and saying, well, yeah, we shifted the burden, but so what? Which sounds like your argument is it's a little troubling. Well, to focus on the trial court's mistaken procedure without giving any real or significant argument or analysis of the facts in this record, fails to acknowledge the trial court's substantive ruling here. And what we have is the courts telling us that to throw out a defendant's statement without conducting a real analysis of the facts, it sweeps far too broadly and it strongly deserves the administration of justice in this case. And we know that because we have a record before us that provides ample evidence to support the trial court's denial of defendant's motion. And consequently, it would be futile and it would be duplicative to send this entire case back for a new hearing on the motion when, one, the facts have already been heard before the trier of fact, and two, there was — Well, what your opponent is asking for is a reversal. He doesn't care about sending it back for a new hearing on the motion. He basically is arguing that this should be reversed because the state acted improperly. That's his argument, as I understand it. You're asking us to do something more narrow if we find that there is an error that we should send it back for the suppression hearing to take place. Wouldn't that be farm over substance? What would be the point of that? The point of that is that we don't want the evidence that's already been heard before the trial of — the trier of fact to be heard yet again. When this court is vested with the power to view everything in the record to determine whether the trial court's ruling on the motion was proper. And here, if we look at the record, we know that the defendant quite literally put himself in the arms of the police in this case. He reached out to the police to inquire about his van. The police followed up with him. He went to the station voluntarily. Come on. That's not really what happened. I think that's a little bit of hyperbole on your part, wouldn't you say? The defendant didn't reach out to the police in the way that you have characterized it in your brief. I mean, the police essentially reached out to him, and he cooperated. Isn't that what happened? Well, the defendant here did get the ball rolling. The defendant, as it's clear in the record, called his ATF agent, who he had previously been a confidential informant for, and inquired about his stolen van. Asked him to call and find out what was going on with his stolen van. And so the detectives did follow up with that, and they went to his home. The defendant even admits that the defendant agreed to accompany the officers to the station. And once he's at the station, he's in an interview room where he is in no way restrained. No handcuffs were used. He wasn't deprived of food, water, or use of the bathroom. There is no evidence that the detectives ever physically touched the defendant, that they threatened the defendant, or lied to the defendant. In fact, instead, we have evidence that the defendant was properly Mirandized the moment that he indicated that he might know something about this murder. So all of this evidence shows that the people, at the very least, established a prima facie case that the defendant knowingly, intelligently, informed the police. And voluntarily waived his rights. So what we know here, is that the trial court got to the right result. It just got there the wrong way. And that's why this court is vested with the power to affirm the trial court's ruling on any basis that's contained within the entirety of the record. Now, regarding the second issue, the record is devoid of any evidence to support the defendant's claim that the detectives in this case deliberately engaged in a question first, warn later interrogation strategy. As a preliminary matter, the defendant concedes that he forfeited this issue. But he tells the court that you should consider his claim under the plain error doctrine. Now, before this court can even consider a defendant's plain error contention, the defendant has to prove to you that an error, namely a Siebert violation, actually occurred. And he fails to do so. Ms. Kuzza, I know that Detective Black, which testified that he was really only a person of interest. But when she arrived at his residence, she already knew about the cap, the FBI cap, that was left at the scene. And that this defendant had a reputation for having worn a cap just like that. And that the van. She knew a lot of things enough to prompt her to go to the defendant's house, bring him in, have a conversation with him. Are you really saying that there was nothing intentional about her questioning him prior to giving him his Miranda rights? Because she had no idea that he was in any way involved with the crime? Sounds like that's what you're saying. And that doesn't ring true to me. Let me explain my argument, because maybe it's a little bit misunderstood. Just to back up, in Siebert, the United States Supreme Court tells us that pre-Miranda statements don't render post-Miranda statements inadmissible unless we know that the detectives deliberately withheld Miranda warnings from the defendant. And because the custodial interrogation is what triggers the requirement for Miranda warnings, the defendant has to prove to you here that the detectives deliberately manipulated the defendant by withholding his Miranda rights while he was in custody. But can't we come to that conclusion by looking at the totality of the facts and circumstances? That's what I'm asking you. If we look at the totality of the circumstances here, it absolutely shows us that the defendant was not in custody at the time of his pre-Miranda interview. No, he wasn't in custody. But can you tell us why we should consider, before he's going to the crime, mentioning that he was at the crime scene, can you tell us why we should say we can conclude that he was not the focus of their investigation as a defendant, but rather he was only being questioned as a victim of a car theft? What the defendant was trying to do here was he was trying to pull a fast one on the police. And he cast himself as the victim of a car theft. And there is no doubt that these detectives were very smart in this case. So clearly, defendant was a person of interest, as was Siobhan. How do you differentiate a person of interest as opposed to being the focus, the target defendant in the case? Well, even if he was a suspect, we don't have the facts in this case to show that he was in custody at the time. But once he becomes a suspect, shouldn't he have been Miranda-ized? It's not until defendant is in custody and that he's not free to leave that the Miranda requirement comes into place. So what we know here is the defendant voluntarily went to the police station. So you're saying that they can keep him in the police station and ask him whatever questions they want, and until they actually place him in custody, they never have to give him Miranda warnings? Is that your argument? Yes. Miranda warnings are not required until defendant is in custody. And how do we determine when the defendant is in custody? We can look at a variety, a number of different things to determine whether the totality of the circumstances shows this defendant was in custody. That includes whether the police presence was constant when he was in the interview room, which here it wasn't. In looking at the totality of circumstances, and I read all of that in your briefs, but the times when the police weren't in the room with him, are you saying he could have just gotten up and left if he wanted to? Come on. We all bring our experiences of life to the cases that we read, and we're not expected to leave common sense at the door. Are you saying that he was free to leave at any time he wanted? So he was just another person of interest, and he was not the focus of their investigation? Is that your argument? Yes. The defendant was free to leave. And the defendant is in this police station on his own volition. He admits that the detective told him at the time that he was coming to the station, he admits the detective said he was not under arrest. In fact, this 26-year-old defendant, the detective told him that his mother could accompany him to the station if she wished. Moreover, the defendant was never handcuffed, and he was never arrested. He was never handcuffed. There are no signs of any formal arrest. There's no fingerprinting, no booking, nothing like that. As I said, the police presence was not constant during the interview. During this interview, what really happened here was the defendant was trying to pull a fast one on the police and he realized, when he was confronted with his inconsistent statements, that he was stuck. And at that point, he admitted that he was at the scene of the crime that day, and at that very moment, he admitted that he was stuck. The detectives immediately stopped the interview, they Mirandized the defendant, he acknowledged those rights, and he waived those rights. Now the defendant relies on the Lopez case to support his CBRT violation claim, and the facts in Lopez are dramatically different from the facts in the present case. What we're dealing with in Lopez is a 15-year-old juvenile, not a 26-year-old confidential informant who is highly sophisticated. And in Lopez, the police went to the defendant's house after the defendant had been directly implicated in the murder. And the police didn't let this 15-year-old defendant's mother accompany him to the station. Instead, the police, with their guns drawn, forcefully escorted this 15-year-old boy from his home. And at the station, the police officers didn't Mirandize the defendant in Lopez, even though they had already placed his co-defendant under arrest, and an officer admitted that he would not have been free to leave the station at that point. And the most important difference in Lopez from the present case is that the officers in Lopez, the moment that the defendant admitted that he was involved in the murder, they let the defendant keep talking. So they found out all the details of the defendant's crime. They found out how the defendant got into the victim's home, how he bound up the victim, how he stabbed the victim, and how he got away with the proceeds. Here, the detective immediately stopped the interview the moment the defendant made an inculpatory statement. That's a good question. Time-wise, what was the time frame from when the defendant first got to the police station to when he got his Mirandize? He got to the police station at 11 and was Mirandized five and a half hours later. We aren't looking, defendant casts this as an overnight affair. It makes it seem like he was there for days. That's not the situation. He was there volitionally as a cooperating witness, and he was only there for a couple of hours, and he was Mirandized the moment that he made an inculpatory statement. What do we know exactly when that happened in time? 4.30 in the morning. 4.30 when he got his Mirandize.  Yes, Your Honor. And it appears that in your mind you, of course, based upon what you know now, you have the suspicion in your mind, you've reached the conclusion that he was trying to pull a fast one on the police. Why can't we also assume that at the time prior to his admissions, he had already become the focus as a defendant, and he had already, in their minds, approached the level of being a person trying to pull a fast one on the police? Why shouldn't we conclude as you have? Because the proper analysis in this case is whether or not a reasonable, innocent person would feel free to leave. So if a reasonable, innocent person that was in the defendant's situation as a cooperating witness knew that their stolen car had been found at the scene of the crime, they would have felt free to leave. And it wouldn't have been unrealistic for that witness to have been at the police station for five and a half hours as a cooperating witness in a brutal murder. So here, the present case, unlike Lopez, shows that the detectives did not deliberately engage in a question first, warn later interrogation strategy. And because the defendant can't prove any error here, plain error analysis is wholly inappropriate. And even if we assume, just for the sake of argument, that an error did occur, plain error analysis is improper because the evidence in this case is not closely balanced. There was extensive and overwhelming evidence against the defendant in this case. We know that at trial, not one, but two eyewitnesses to the murder testified against the defendant. Both the victim's wife and the victim's son testified that the defendant came into their home and shot and killed Michael Wilkins right in their own living room. The victim's wife. The fact that the evidence in your opinion is overwhelming, does that make it okay to disregard the procedural rules in the early stages of these proceedings? I mean, that seems to be what you're saying. With respect to the first argument, you basically said, well, yeah, it was error, but, you know, kind of a so what thing. And with respect to this argument, you're saying the same thing. So what? So why do the procedural rules exist if it's okay not to follow them once the evidence is discovered to be overwhelming? I mean, is that your argument? No, Your Honor. In no way are the people belittling the error that occurred at the pretrial motion regarding the first issue. In no way are we belittling or making light of the error that did occur. However, we are looking at a trial error in this case, and that is subject to a harmless error analysis. Same thing in the Siebert claim here. If we're looking at this from a plain error standpoint, the evidence was not closely balanced. Two eyewitnesses. We have physical evidence at the scene of the crime. His hat that was identified by Agent Sisto and that had his DNA evidence on it. We have the defendant quite literally leaving his business card at the scene of the crime. As the van, in the center console of the van, were all of the defendant's business cards. And most importantly. Which brings us back to Justice Harris' question. Based on all of that that you just said, why is it reasonable for us to assume that this defendant was the focus of the police investigation? He was their target from the beginning. I mean, you just listed a roster of things that would lead any reasonable police officer to believe this is the guy. Why shouldn't we conclude that? Absolutely. Based on everything that you have just said and that's in the record. The defendant was absolutely a person of interest at this time. No, I'm not. Not a person of interest. He was the target. The person that they were looking at as the perpetrator of this crime. Why isn't it as reasonable for us to conclude that based on these facts and this evidence and everything you've just outlined, as it is for you to argue that the defendant was essentially trying to pull a fast one? So that was Justice Harris' question. I'd like to know what the answer to that is. I apologize if I didn't answer it more clearly before. But what we're looking at here is all of the evidence that was admitted at trial. And if we're looking at what's going on at the time of the defendant's pre-Miranda interview, all of these dots had not yet been connected. Yes, it was absolutely suspicious that someone whose car was found at the scene of the crime would call and report it stolen that very same day. But the defendant assumes facts that aren't in evidence when he assumes that the detective knew at the time that that FBI hat belonged to the defendant. There's no evidence in the record to show that at that time. That's something, a dot that was connected by the police later on in the investigation. So when I'm explaining all of this evidence that we had at trial, all of which is separate and apart from the defendant's confession, all of that is far past the investigation from the police. And all of it's presented at trial. So here, as I was saying before, two eyewitnesses, the defendant's hat, we have the van, and most importantly, defendant's girlfriend, Siobhan, testified against him at trial. And so she testified to all of the details. Defendant's motivation for the murder, his preparation, his execution, and their attempt to cover up this brutal crime. So for those reasons and those stated in the people's brief, we ask that you affirm defendant's conviction and sentence. Thank you, Ms. Casey. Brief rebuttal, Mayor Anderson. Thank you. Question about the record. I show that in cross-examination of Detective Blackledge, she indicated that she was questioning Mr. Ball without Mirandizing him until he implicated himself. That's at, I believe it's 3I96, so that would be the site for that. Your Honors, person of interest, suspect, target, we know that Detective Blackledge spoke to Agent Sisto of the ATF who worked with Mr. Ball. They spoke about Mr. Ball's situation. She knew about the vehicle and how it was tied to Mr. Ball. And sometime between midnight and 3 in the morning, after the detectives had gone back and forth between Mr. Ball and Siobhan, his girlfriend, a reasonable person, any person, would have known, I'm in Area 2 Headquarters. I'm in a closed room. They've told me that they're going after my girlfriend. They're asking me how the stories match up. I'm not free to leave. I'm not walking out of here. And that's the situation that Mr. Ball was in. This was professional police questioning, standard interrogation technique. You've got two suspects. You go between them, pick out a flaw, pick at that flaw until you get an inconsistency, and go from there. Can you talk about Lopez? Lopez is a younger defendant. We know the facts, but can you compare it to your case? Only to the extent that I think Lopez and Alfaro both suggest that it's the process that has to be respected, noted in Questioning Opposing Counsel, that you can't excuse how bad the facts that come out at trial are when you have serious procedural errors that undermine fundamental rights. And in both instances, the arguments I presented, I submit that that's what's happened here. And I'd urge this Court to reverse the convictions. Thank you very much. This case will be taken under advisement.